UNITED STATES of America,
Plaintiff-Appellee,

v.

George Walter MEEK, Defendant-Appellant.

No. 16309.

United States Court of Appeals
Seventh Circuit.

Jan. 11, 1968.

Rehearing Denied Feb. 2, 1968.

Harvey B. Stephens, Springfield, Ill., for appellant.

Carl W. Feickert, U. S. Atty., Arthur J. Ginsburg, Asst. U. S. Atty., E. St. Louis, Ill., for appellee.

Before HASTINGS, Chief Judge, and CASTLE and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

George W. Meek was indicted on a two-count indictment. The first count charged him with transporting in interstate commerce a stolen motor vehicle in violation of 18 U.S.C. § 2312; the second count charged him with concealing the same stolen motor vehicle in violation of 18 U.S.C. § 2313. After a jury found the defendant guilty on both counts, the district court sentenced him to concurrent five year terms of imprisonment. In seeking a reversal, the defendant makes four claims: the insufficiency of the evidence, the lack of a fair trial, the erroneous admission of evidence, and the giving of improper instructions.

A white Mustang automobile owned by Airways Rent-A-Car of Tampa, was rented in Tampa, Florida for two days on March 14, 1966. The rental agreement was signed "George W. Meek", as lessee. When the car was not returned to the rental agency, a theft report was filed with the local sheriff's office on March 21, 1966.

Howard Richard Hanson, the Government's chief witness and an acquaintance of the defendant, met him for the first time on March 24, 1966 in a restaurant in East St. Louis, Illinois. The next morning, the defendant solicited Hanson to drive with him to Arkansas "to get some titles changed." On the morning after their return, the defendant picked up Hanson at his home and drove to a house in St. Louis, Missouri. There the defendant removed Missouri license plates from a black Mustang automobile registered in the name of Margaret Ecker. They then drove to the Triple A Salvage lot in East St. Louis where a white Mustang was parked. The defendant took some keys out of his pocket, got in the white Mustang and started the motor, while Hanson put on the license plates which they had previously picked up in St. Louis.

The defendant told Hanson to drive the car to Hanson's house where he was "supposed to pick it up * * * later on in the evening." While driving the white Mustang, Hanson was arrested for speeding in Centreville, Illinois. After being told by Hanson that the car was stolen, the arresting officer examined the car for its identification number. This number corresponded to the identification number listed on the Florida registration certificate covering the car described in the Airways rental agreement.

While the defendant and Hanson were on their way to St. Louis to pick up the license plates, the defendant told him that he had rented the white Mustang "five or six months before in Florida." Later, at the Triple A Salvage lot, the defendant said to Hanson, "I am going to come over [to your house] and pick up the car after while and take it over to St. Louis and get rid of it." He also told Hanson, "Make sure you don't tell anybody about the car being at the Triple A place, so nobody will get in trouble."

The defendant contends that no evidence was adduced at the trial to prove that the motor vehicle in question was rented by him or was in his possession

in Tampa, Florida. He also contends that there was no competent evidence from which the jury could infer that he had possession of the vehicle, knowing either that it was stolen or that it had been transported in interstate commerce. Finally, the defendant argues that there was no showing that the car rented in Florida was the same car that Hanson was driving at the time he was arrested.

For the Government to prevail on the count charging a violation of 18 U.S.C. § 2312, there must be proof that the automobile in question was stolen, that the defendant knew the automobile was stolen, and that the stolen automobile was transported in interstate commerce. We believe that there was sufficient evidence, both direct and circumstantial, to satisfy these elements of the offense. Settled precedent has established that a rented automobile which has not been returned to its owner, but has been converted to the lessee's own use, is a stolen vehicle within the meaning of 18 U.S.C. § 2312. United States v. Turley, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957). Moreover, from the evidence of possession of a recently stolen motor vehicle, unless such possession is satisfactorily explained, an inference may properly be drawn that the possessor knew the car was stolen. United States v. Bennett, 356 F.2d 500 (7th Cir. 1965), cert. denied, 384 U.S. 975, 86 S.Ct. 1868, 16 L.Ed.2d 685 (1966).

Although there was no direct evidence adduced to show either that the defendant rented the automobile in question from the agency in Tampa, Florida, or that he drove it to East St. Louis, Illinois, the circumstantial evidence was sufficient for the jury to draw such inferences. The owner of the Triple A lot testified that the defendant brought a white Mustang to his place of business at the end of March, 1966. Hanson testified that the defendant took him to a Mustang parked on the Triple A lot. He further testified that the defendant had keys to the car, that he started the engine, and that he gave possession of the car to Hanson. The car that Hanson was driving when he was arrested was later identified as the car rented from Airways by "George W. Meek."

Evidence that the identification number found on the car driven by Hanson was the same as the number on the state registration certificate covering the car described in the rental agreement was ample to show that the car rented in Florida was the same car that the defendant turned over to Hanson in Illinois. This conclusion is supported by the defendant's admission to Hanson that he had rented the Mustang in Florida. From all this evidence, the jury could reasonably infer that the defendant rented the Mustang in Florida, converted it, and then transported it to Illinois.

In addition, the evidence was sufficient to show that the defendant concealed the Mustang, knowing that it was stolen and moving in interstate commerce, as charged in the second count of the indictment. The defendant's procurement of Missouri license plates, which Hanson placed on the car at the Triple A lot, was an act of concealment. Phillips v. United States, 206 F.2d 923 (10th Cir. 1953). Although the white Mustang came to rest temporarily in Illinois, that fact alone does not preclude the drawing of an inference that the car was still moving in interstate commerce. The jury could reasonably infer such movement from evidence of the defendant's trip to Arkansas to get "title papers changed" and his statement of intent to sell the Mustang in Missouri. Babb v. United States, 351 F.2d 863 (8th Cir. 1965); Broom v. United States, 342 F.2d 419 (5th Cir. 1965).

The defendant urges that he was deprived of his right to a fair trial as guaranteed by the sixth amendment. Some of his contentions in this regard were based on a pro se motion for change of counsel and a continuance. The motion, filed on March 22, 1967, was considered and denied at the start of the trial five days later. His remaining contentions were contained in a pro se

amendment to his counsel's motion for a new trial which was also denied.

In substance, the defendant argues that his counsel was derelict in not utilizing subsection (e) of section 2 of the Criminal Justice Act of 1964, 18 U.S.C. § 3006A(e), so that investigative services could be provided. Moreover, he claims that neither his attorney nor the court advised him about this provision. He also contends both that his counsel failed to request the issuance of subpoenas as provided by Fed.R.Crim.P. 17 (b) and that the district court erred in refusing the issuance of such subpoenas. Finally, the defendant urges that the court erred in denying his request for a continuance of the trial because of his counsel's failure to prepare the type of defense he proposed.

Defense counsel, appointed in November 1966, wrote the defendant several times prior to trial and also contacted him on three occasions in the jail at St. Louis and on three occasions in court with regard to his defense. On January 10, 1967 the defendant's counsel requested two items of the assistant United States Attorney: the transcript of the preliminary hearing before the United States Commissioner at Lexington, Kentucky and the Tampa, Florida telephone directory. On March 3 defense counsel was notified that there was no available transcript of the preliminary hearing and that the commissioner had no recollection of the hearing. Six days later, the Tampa telephone directory was furnished the defendant. On March 16, during the course of a conversation with Government counsel concerning his plea, the defendant gave the assistant United States Attorney the names of three motels and a prospective witness, David E. Metzger. At Government counsel's request and with the approval of defense counsel, the F.B.I. conducted a supplemental investigation in Tampa to learn whether the defendant had registered in any of the motels designated and whether Metzger lived at the address given. The F.B.I. investigation proved negative. This fact was reported to the assistant United States Attorney several days later at which time he told the F.B.I. to cease the investigation. On the morning of the trial, defense counsel was informed of the result of the investigation.[1]

The foregoing events were related to the district judge at the time the defendant's pro se motion was acted upon and elaborated at the hearing on his motion for a new trial. The record suggests that the defendant neither adequately informed his counsel of the role that Metzger might play in his defense nor fully disclosed the purpose in attempting to prove that he [defendant] had stayed at a Tampa motel. Only at the hearing on his motion for a new trial did the aim of defendant's efforts become clear—the establishment of an alibi. According to the defendant, after renting the car in question, he and Hanson allegedly stayed in a Tampa motel, Hanson taking the car and driving it to East St. Louis. Supposedly, Metzger could testifiy relative to this episode.

On the basis of the record, we conclude that the defendant's contentions are without merit and that he was adequately represented by counsel. Although his counsel's efforts at locating prospective witnesses might have been undertaken more efficaciously, we cannot properly second-guess his manner and means of proceeding absent a clear indication of incompetence or substantial prejudice to the defendant. No such showing appears in the record.

Defendant lacked evidence of substance at the time the trial started not because of his counsel's inadequate preparation or failure to utilize possible investigative resources, but because of the incomplete and inaccurate information that the defendant imparted to him.

1. Contrary to the information that he gave to the Government, the defendant told his attorney that Metzger was living somewhere in Ohio rather than in Florida. Even at the end of the trial, it was not clear that Metzger's whereabouts were known although there was some indication that he was in Clearwater, Florida.

Defense counsel's failure to subpoena certain witnesses was seemingly prompted by his judgment that their testimony would prove more harmful than helpful. Moreover, during the trial, he cross-examined witnesses, interposed objections to testimony, and argued cogently to the judge and jury. After the trial, he continued to labor in defendant's behalf in seeking a new trial.

Nor was the court insensitive to the defendant's requests.[2] On the day the trial started, the court directed the Government (through the F.B.I.) to investigate the address of a Tampa motel, belatedly disclosed by the defendant, where he claimed he had stayed. The F.B.I. made a prompt investigation, reporting back in a matter of hours that a vacant lot appeared at the address. At all times during the proceeding, the court gave considerate and extended attention to the defendant's arguments and contentions.

 We must assume that an attorney appointed for an indigent defendant acts in the best interests of his client. Absent a clear showing to the contrary, the defendant is bound by his lawyer's judgment with respect to the conduct of the defense. The very purpose of appointing counsel is to insure that a person charged with a criminal offense shall have the advice and aid of a person trained in the law. Such advice and aid was tendered to the defendant by his counsel in this case.

After considering the defendant's other contentions, that the district court erred in the admission of certain documentary evidence and in the giving of certain instructions, we find that they are without merit.

The judgment of conviction is affirmed.

The court appreciates the services rendered by Mr. Harvey B. Stephens of the Illinois Bar, who was appointed pursuant to the Criminal Justice Act to represent the defendant in this appeal.

2. We note that on one occasion prior to March 27, 1967 the court continued the trial date to enable defendant to contact or locate witnesses.