UNITED STATES of America,
Plaintiff-Appellee,

v.

William Mitchell **HOOD**, Defendant-
Appellant.

No. 17370.

United States Court of Appeals,
Seventh Circuit.

Feb. 13, 1970.

Rehearing Denied March 26, 1970.

Sherman C. Magidson, Charles A. Bellows, Jason E. Bellows, Herbert Barsy, Chicago, Ill., for defendant-appellant; Bellows, Bellows & Magidson, Chicago, Ill., of counsel.

Richard L. Kieser, Asst. U. S. Atty., South Bend, Ind., Alfred W. Moellering, U. S. Atty., Fort Wayne, Ind., for plaintiff-appellee.

Before SWYGERT and FAIRCHILD, Circuit Judges, and WILL,[1] District Judge.

SWYGERT, Circuit Judge.

The defendant, William Mitchell Hood, was charged in a three-count indictment with knowing receipt and concealment of stolen motor vehicles in violation of 18 U.S.C. § 2313. The district court imposed a concurrent prison sentence of three years on each count after a jury verdict finding Hood guilty on all three counts. The defendant appeals, raising three issues: (1) the admission of evidence obtained from a search conducted on the basis of an allegedly invalid search warrant; (2) the sufficiency of the evidence to support convictions on counts II and III; and (3) the correctness of an instruction which allowed the jury to infer from possession of property recently stolen that the person in possession knew the property was stolen.

William Mitchell Hood was president and general manager of Frigid Food Express, Inc., a trucking firm. The Federal Bureau of Investigation suspected Hood of purchasing stolen tractors and using them in Frigid Food's interstate motor carriage operations. On the basis of an affidavit narrating information obtained from three unnamed informants and signed by Robert E. Radde, a special agent of the FBI, and Lee H. Cole, a detective sergeant of the Indiana State Police a search warrant was secured from a United States Commissioner. The vehicles described in the indictment were seized in a raid on Frigid Food's terminal in Westville, Indiana conducted on March 7, 1968 pursuant to the search warrant.

The affidavit sworn by Radde and Cole was the only material presented upon which the Commissioner could make a finding of probable cause. The affidavit contained the following allegations: that a reliable informant had seen tractors which affiants knew to be stolen on the premises of Frigid Food's terminal in Westville, Indiana; that the informant had "on various occasions in the past furnished information leading to the recovery of similar type stolen property"; that another informant, believed by affiants to be reliable, stated that employees of Frigid Food were engaged in stealing tractors and that he personally observed one of the stolen tractors on Frigid Food's premises; and that another informant, believed to be reliable, observed the use of many tractors known to him to be stolen in Frigid Food's operations.

It is settled law that probable cause for the issuance of a search warrant may be based on hearsay furnished

---

by a confidential informant, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). In Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Supreme Court set forth explicit standards by which to test the reliability of informant hearsay used to establish probable cause. The magistrate to whom the application for a search warrant is presented "must be informed of some of the underlying circumstances from which the informant concluded" that contraband was present on the premises and "some of the underlying circumstances from which the officer concluded that the informant * * * was 'credible' or his information 'reliable'," 378 U.S. 108, 114, 84 S.Ct. 1509, 1514 (1964). Consequently, we must apply the two-pronged test of *Aguilar* to the affidavit in this case.

We think that the circumstances underlying the first informant's statement form a sufficient factual basis to support his allegation that stolen tractors were present on Frigid Food's premises. The showing required in support of the informant's accusation is subject to the same probable cause standards used in appraising a police officer's own observations. Since the first informant told affiants that he had personally seen tractors which the affiants knew to be stolen, the first aspect of the *Aguilar* test is clearly satisfied even if the statements of the other informants are ignored. Hood argues that the informant must not merely see the tractors but know on the basis of personal knowledge that they are stolen in order for the *Aguilar* standard to be met. This argument was implicitly rejected in Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964), where there was no evidence that the informant knew, on the basis of personal knowledge, that the furs which he observed on defendant's premises were stolen.

With respect to the reliability of the informants, the officers swore that one of the informants had, "on various occasions in the past furnished information leading to the recovery of similar type of stolen property." This representation alone perhaps constitutes a sufficient underlying circumstance to meet the *Aguilar* requirement. Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). We need not rest our ruling, however, on this solitary statement. The informant's reliability was further strengthened by the hearsay information furnished by the other two informants since their statements tended to corroborate the hearsay supplied by the first informant. In Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964), the Supreme Court sustained a finding of probable cause based upon an affidavit containing interrelated hearsay information from a number of undisclosed informants. The affidavit contained representations that each informant had supplied the FBI with reliable information in the past. There, as here, the interlocking nature of the secondhand information from several sources fortified the reliability of each informant.

One difference between *Rugendorf* and the instant case must be noted. With reference to two of the informants in the case at bar the officers said only that they believed them to be reliable without giving reasons for their belief. Were we to appraise the reliability of these two informants independently, a challenge to their reliability could properly be raised. However, these informants' reliability must be considered in the context of the information supplied by them as well as by the informant whose reliability was vouched for by reference to past occurrences. When thus considered, the insufficient basis offered in the affidavit for the reliability of the latter two informants becomes less significant and does not bar the use of their information for corroborative purposes when determining the reliability of the first informant.

For the reasons stated, the requirements set forth in *Aguilar* are ful-

ly met and a sufficient basis existed for the Commissioner to issue the search warrant.

### The Insufficiency of the Evidence

The defendant contends that the Government failed to prove by competent evidence the charges in counts II and III of the indictment and that its failure to do so prejudiced the jury in determining his guilt under count I. With respect to counts II and III the Government was required to prove that the vehicles named in the indictment were stolen and that they were moving as interstate commerce in the manner alleged in the indictment. The owners of the trucks in counts II and III did not testify at the trial.

■ We think the Government satisfied its burden of proof on count II. Count II alleged that on or about August 28, 1967 Hood received a stolen 1966 Mack tractor moving as interstate commerce from Chicago to Westville, Indiana. In support of this charge, a Government witness, Lehman Casey, testified that he stole a 1966 Mack tractor and delivered it to Hood, suggesting that it be registered in the name of Jack Bell, a fictitious person. Casey further testified that Hood paid him $2,000 for the vehicle although its market value was approximately $20,000. Another Government witness, Thomas Wheeler, testified that in 1967 he sold an old and dilapidated truck to the defendant. At the time the vehicle described in count II was seized pursuant to the search warrant, it was registered in the name of Jack Bell and possessed a vehicle identification number identical to the Wheeler truck. Over the objection of the defendant, the district court permitted a special agent of the National Auto Theft Bureau to testify that, according to a Chicago police report, a vehicle answering the description contained in count II was owned by a Clair Robinson of Newcastle, Pennsylvania and had been stolen on August 27, 1967. Even without the police report there was sufficient circumstantial evidence to support the conviction under count II. Accordingly, it was harmless error to permit the hearsay evidence to be introduced.

The Government failed to satisfy its burden on count III. Count III alleged that Hood received and concealed a stolen 1961 Mack tractor, serial number G753LST1418, which was moving in interstate commerce from Calumet City, Illinois to Westville, Indiana. The sole evidence presented by the Government to demonstrate that the tractor was stolen was the testimony of an insurance agent. The agent, whose company insured the vehicle named in the indictment, testified over the defendant's objection that the company's files showed that the owner, Albert Hogan, reported the tractor missing from Calumet City, Illinois on September 3, 1967.

In the search conducted at Frigid Food's terminal, a red, 1961 Mack tractor was seized. The tractor bore Indiana license plates issued for a 1962 Mack tractor, serial number G754LT153, registered to Frigid Food Express, Inc. The door post serial number on the tractor was 673LST1498. The serial number engraved on the frame had been filed off, but when raised by an acid etching procedure it was revealed to be G753LST1418, the serial number assigned to the Hogan tractor.

■ No foundation was laid for the introduction of the testimony of the insurance agent under the Business Records Act, 28 U.S.C. § 1732, exception to the hearsay rule. Even if the Government had attempted to lay a foundation, there is a significant question whether the Business Records Act is applicable in this instance. Therefore, permitting the use of hearsay evidence to prove the theft of the tractor described in count III was erroneous, and since there was no other evidence, direct or circumstantial, offered to establish this fact, the Government failed to prove the charges contained in that count.

The defendant argues the evidence presented to prove count III and the in-

competent evidence presented to prove count II prejudiced the jury's consideration of count I. With respect to the competent evidence presented to prove count III (which consisted primarily of the evidence of seizure of Hogan's tractor), we think that evidence could properly be introduced to prove intent under count I. United States v. Phillips, 375 F.2d 75, 79 (7th Cir. 1967). Hood argues, however, that proof of intent in count I cannot be made by the incompetent hearsay evidence presented in counts II and III and that his conviction on count I was contaminated by this admission "which the jury unquestionably considered in their deliberation on count I."

■ We are not persuaded by this argument. The court properly instructed the jury to consider each count separately and that the Government had to prove its case with respect to each count. We think this instruction adequately protected the defendant, and that, although the admission of the hearsay evidence was erroneous, prejudicial error did not occur.

### The Jury Instruction

■ The defendant contends that it was error for the district court to instruct the jury[2] that "possession of property recently stolen, if not satisfactorily explained, is a circumstance from which the jury may reasonably draw the inference and find that the person in possession knew the property had been stolen." We think the instruction was properly given in this case.

Hood argues that the instruction is invalid because the fact proved, possession of recently stolen property, is not "rationally connected" to the fact presumed, knowledge that the property is stolen. Therefore, Hood contends that an instruction allowing a jury to draw such an inference violates due process under recent Supreme Court cases, Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943).

The cases cited by the defendant involve the constitutionality of presumptions created by statute. In such statutory presumption cases the court must ask whether the legislature could determine "with substantial assurance that the presumed fact is more likely than not to flow from the proved fact * * *." Leary v. United States, 395 U.S. 6,

---

2. The phrase in question is included in the jury instruction which reads in pertinent part:

> Possession of property recently stolen, if not satisfactorily explained, is a circumstance from which the Jury may reasonably draw the inference and find that the person in possession knew the property had been stolen. The same inference may reasonably be drawn from a false explanation of such possession.
>
> Possession in one State of property recently stolen in another State, if not satisfactorily explained, is a circumstance for which the Jury might reasonably draw the inference and find, in the light of surrounding circumstances, that the person in possession knew it to be stolen property.
>
> The term "recently" is a relative term which has no fixed meaning. Whether property may be considered as recently stolen depends upon the nature of the property and all the facts and circumstances shown by the evi-

dence. The longer the period of time since the theft, the weaker the inference which may be drawn from unexplained possession.

> * * * * *
>
> In considering whether possession of recently-stolen property has been satisfactorily explained, the Jury will bear in mind that in the exercise of Constitutional rights, the accused need not take the witness stand and testify.
>
> Possession may be satisfactorily explained through other circumstances, other evidence, independent of any testimony of the accused.
>
> It is the exclusive province of the Jury to determine whether the facts and circumstances shown by the evidence warrant any inference which the law permits the Jury to draw from possession of recently-stolen property.
>
> If any possession the accused may have had of recently-stolen property is consistent with innocence, the Jury should acquit the accused.

36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57 (1969). When testing a common law presumption in a jury instruction a court is faced with a different question, namely, whether the facts before it indicate that the presumed fact is more likely than not to flow from the proven fact in the given case. Since a legislative enactment is not involved and the accompanying policy against legislative interference with the presumption of innocence is inapplicable, the abstract rule of law embodied in the jury instruction need not be tested apart from the facts before the court. Thus the jury instruction before us has been accepted in a myriad of cases, e. g., Wilson v. United States, 162 U.S. 613, 619, 16 S.Ct. 895, 40 L.Ed. 1090 (1896); United States v. Meek, 388 F.2d 936 (7th Cir. 1968); United States v. Slaughter, 255 F.2d 770 (7th Cir. 1958); United States v. Minieri, 303 F.2d 550 (2d Cir. 1962).

Since we have held that Hood was erroneously convicted on count III, we need only consider whether the instruction was properly given with respect to counts I and II. The evidence demonstrates that the tractor in count I was recently stolen. The record shows that the 1963 Mack tractor charged in count I was stolen from a repair shop in Louisville, Kentucky on February 10, 1968 and that the vehicle was received by Frigid Food shortly thereafter. Similarly, as we have already discussed, the evidence demonstrates that the tractor in count II was recently stolen.

Although the testimony is somewhat conflicting, we believe the jury could find that the vehicles in question were in Hood's possession and under his individual control. At the time of the search the vehicles in counts I and II were found at Frigid Food's terminal operated by the defendant. The secretary-treasurer of Frigid Food testified that Hood had purchased all the tractors possessed by the firm. A Government witness further testified that Hood offered to pay him $2,000 for two or three tractors which the witness would acquire by theft.

From the proof that the vehicles in counts I and II were recently stolen and in Hood's possession the jury could conclude that it was more likely than not that Hood knew the vehicles were stolen. That the fact presumed is rationally connected to the fact proved in this case is readily apparent from common experience. The transferee of a motor vehicle invariably knows the origin of the vehicle which comes into his possession. The manner of transfer, including the amount of consideration given for the vehicle, the identity and reputation of the transferor, and the presence of the proper certificate of title governing the vehicle, strongly indicate to the transferee whether or not the vehicle was stolen. These considerations, though rarely mentioned, are self-evident and explain the universal judicial acceptance of presumption similar to the one contained in the jury instruction in the instant case.

■ For the reasons stated the convictions under counts I and II are sustained and the judgment under count III is vacated. It is well settled that when the sentences imposed on multiple counts of an indictment are of equal length and are to run concurrently, the failure of proof of one or more of the counts does not require reversal if there is sufficient proof of one count. United States v. Smith, 253 F.2d 95 (7th Cir. 1958); Kramer v. United States, 147 F.2d 202 (9th Cir. 1945).

The judgment is affirmed.

WILL, District Judge (dissenting in part).

There are two ways of effectively eliminating the Fourth Amendment from the law of the land. One is to repeal it, a difficult if not impossible undertaking. The other is to reduce it to a formalism, compliance with which may be accomplished by law enforcement officers incanting certain ritualistic conclusory phrases with no substantiation of their truth or substance.

The procedure followed in the instant case and approved by the majority illustrates how easily the latter result may

be achieved. Here, two warrants authorizing search for the same allegedly stolen property at two geographically separate locations were issued by the United States Commissioner on the basis of a single joint affidavit signed by a Special Agent of the Federal Bureau of Investigation and a Detective Sergeant of the Indiana State Police. The affidavit described information purportedly given to the affiants by three separate unnamed informers.

The first of these was described in the affidavit as "a reliable informant" who had "on various occasions in the past furnished information leading to the recovery of similar type stolen property." The affidavit further stated that this informant had "stated to the undersigned" that from July 1967 to February 1968, he had seen certain tractors on the premises of defendant's company. At the hearing on the motion to suppress, it appeared that the affidavit was in part false since neither of the affiants had ever spoken to this informer, the information both as to his past services and the tractors he had seen on the defendant's premises having been passed on to them by another F.B.I. agent.

The affidavit further averred that the affiants knew the tractors seen by the informer to be stolen although most of them were identified by no more than the name of the manufacturer, the model year and, in some instances, their color, e. g., 1967 Mack U–8 Tractor, dark green, 1967 White Tractor, pea green, 1966 and 1967 Autocar Tractors.

The second informer is described in the affidavit simply as "Another informant, whom your affiants believe to be reliable * * *" and the third as "Another informant, believed by your affiants to be reliable. * * *"

As the majority recognizes, a search warrant may be properly issued only by a neutral and detached magistrate after an independent finding of probable cause to believe that contraband or stolen merchandise is on the premises. Johnson v. United States, 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1947).

While probable cause may be based in part on hearsay, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), the magistrate must be informed of some of the underlying circumstances on which the informant based his conclusions, as well as some of the underlying circumstances from which the officer making the affidavit concluded that the informant was reliable. Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1963); Spinelli v. United States, 393 U.S. 410, 413, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

It seems obvious to me that neither of these minimum criteria are met by the affidavit in this case. There is no underlying information as to how any of the informants or the affiants knew any of the tractors in question were stolen. The meagerness of the description of many of them should cast serious doubt or at least compel inquiry by a "neutral and detached magistrate" as to the basis of the conclusion. Even as to those identified, there is no underlying information as to where or when they were stolen or how the affiants or the informants could "know" that they were. The Commissioner apparently simply accepted the conclusory averments in the joint affidavit without learning any "underlying circumstances."

The absence of "underlying circumstances" as to the reliability of the three informants is equally total. This Court previously found inadequate an averment without further underlying information "that said informant has in the past furnished the affiant with reliable and accurate information and that he knows the informant to be a reliable source." United States v. Roth, 391 F. 2d 507 (C.A. 7, 1967). That is substantially the same as the description of the first informant here. The other two, as previously noted, are simply described as informants whom the affiants believe to be reliable.

The majority, apparently recognizing that none of these alone is an adequate basis to establish the reliability of any of the informants, concludes that the

fact that all three allegedly gave similar information establishes their reliability. But nothing plus nothing plus nothing is still nothing.

I assume that the reason why the Supreme Court has stressed the necessity for the magistrate to be advised in the affidavit of the "underlying circumstances" is to prevent the kind of formalistic exercise which took place here. The magistrate here did not know, 1) the names of any of the informants, 2) any specific facts on which the affiants based their beliefs as to the reliability of any of the informants, or 3) any specific facts on which either the affiants or the informants based their conclusion that stolen property was on the premises to be searched.

If information from anonymous informants is to furnish the basis for probable cause, specific facts must be included in the affidavit on which the conclusions of reliability and the presence of stolen property can be tested by the magistrate or we shall open the door to the issuance of search warrants whenever law enforcement officers desire them. While I have no serious doubt that the three informants actually existed in the instant case, the United States Commissioner had no basis for an independent determination that they did, that they were reliable or that stolen property would be found on either or both of the premises he authorized to be searched. Conclusory representations that anonymous informants are "reliable," "believed to be reliable" or have "in the past furnished information leading to the recovery of similar type property," or that property "known" by the affiants or the informants to have been stolen is on the premises do not, in my opinion, satisfy

the requirements of probable cause or constitute the "underlying circumstances" which *Aguilar* and *Spinelli* demand. If they do, the Fourth Amendment has been reduced to a formalism, compliance with which can be achieved by the recitation of certain ritualistic phrases, and the magistrate will be merely a rubber stamp for law enforcement officers seeking a search warrant.[1]

While I agree with the rest of the majority's conclusions, for the reasons heretofore stated, I dissent from their determination that the affidavit was adequate and would therefore reverse.

---

1. Protecting the anonymity of informants, a desirable objective, need not nullify the Fourth Amendment. Supplementary oral testimony under oath in which the necessary underlying circumstances are disclosed to the magistrate can be taken, a transcript made thereof and, if appropriate, that transcript examined in camera by the trial judge. In the instant case, oral testimony was presented to the Commissioner but no record was kept thereof, and at the hearing on the motion to suppress he could not recall any specific information presented to him other than that contained in the affidavit. We must, therefore, as the majority recognizes, determine the validity of the search warrants solely on the adequacy of the affidavit.