**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jerome Alvin ZEMKE, Charles Joseph Canesi, Defendants-Appellants.**

**Nos. 71–1199, 71–1200.**

United States Court of Appeals,
Seventh Circuit.

Feb. 7, 1972.

Certiorari Denied May 22, 1972.
See 92 S.Ct. 2051.

Robert E. Poynter, Lafayette, Ind., for defendants-appellants.

William C. Lee, U. S. Atty., John R. Wilks, Asst. U. S. Atty., Fort Wayne, Ind., for plaintiff-appellee.

Before DUFFY, Senior Circuit Judge, KERNER[1] and PELL, Circuit Judges.

PELL, Circuit Judge.

Zemke and Canesi, defendants, have appealed from their jury trial conviction of violating 18 U.S.C. § 2312,[2] interstate transportation of motor vehicles, in this case motorcycles. The defendants raise search and seizure questions and challenge one instruction given by the district court.

On June 17, 1970, while on routine patrol Indiana State Police Officer Stout observed the defendants and the motorcycles in question by bridge pillars on an interstate highway in northern Indiana. The officer stopped to determine if the defendants needed assistance.

They responded negatively; however, Stout requested some identification such as a driver's license. He noted that both had Minnesota operator licenses but the two motorcycles bore Massachusetts tags. At about this point Officer Stout glanced at the serial number of one of the vehicles and it appeared to him that at least one of the visible numbers had been altered. He then looked at the serial number of the other motorcycle and it also appeared to him to have been changed from that which the manufacturer had placed thereon.

Officer Stout advised the cyclists that it was a violation of Indiana law to be in possession of a motor vehicle with an altered serial number. He also told them he "would like to look into it a little more carefully." They "agreed· to proceed, approximately six miles or so down the road to a service station where we could be off the road in a little safer area."

Upon arrival at the station, the officer checked the manufacturer's confidential number concealed under the crank case. By way of contrast, the number at which Stout had first looked while on the roadside was apparently clearly visible "just above the pedals a few inches on the left side of the vehicle."

Upon ascertaining the numbers on the two locations were not mutually consonant, Stout arrested both defendants for violation of the Indiana statute concerning possession of motor vehicles with altered serial numbers.

Following the arrest, the officer looked into the saddle bag area and found a propane torch and solder. Stout testified that serial numbers could be altered temporarily by the use of a soldering process ·but that it could not be done with a soldering iron as a torch would

---

1. Judge Kerner heard oral argument, but did not participate in the adoption of this opinion.

2. "§ 2312. Transportation of stolen vehicles

Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,-000 or imprisoned not more than five years, or both."

be required to heat the entire area. Subsequently it was determined that the motorcycles in fact had been stolen in Tonawanda, New York and Zemke and Canesi were thereupon indicted for the federal offense upon which they were tried.

The defendants now contend that their convictions should be reversed because viewing the facts from the position of the police officer on the scene, he did not have probable cause to search their vehicles without their consent and he did not have probable cause to arrest them until he had conducted his allegedly unlawful search. However, the record is wholly devoid of any showing that this contention was brought to the attention of the district court by motion to suppress prior to the trial, objections to testimony or exhibits during trial, or by any post-conviction motion.

Unless this argument of the defendants sets forth a plain error or defect affecting substantial rights we need give it no further attention. Rule 52(a), Fed.R.Crim.P. However, we need not reach a decision on this phase of the matter as we find that the contention would have been meritless even if it had been raised in the district court.

In giving consideration to this matter we have difficulty discerning whether the challenge is directed at the visual observation of the serial number at the roadside, the more searching examination for the confidential number, the search of the saddle bag area following the arrest, or all three. Proceeding on the assumption that the defendants are willing to rely on any one which might be the basis of a reversal, we will look at all of the possibilities.

Beginning with the premise of greater liberality of the applicable search and seizure law in the case of a vehicle because of its mobility, Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), we find nothing unreasonable nor any improper

invasion of the defendants' rights by virtue of the officer noting at the bridge situs that one of the numbers failed to carry a badge of apparent authenticity. We cannot conceive that when confronted with this plain and open evidence of a violation of the state law, whose enforcement was his duty, the officer pursued other than a proper course of action.

Defendants place undue significance on the word "appeared" in the officer's testimony. However, that which is visible to the perception of the viewer is that which appears to him. Even if the officer's glance had brought merely the suggestion of an alteration to his mind it should not in our opinion be a basis for him just to drop the matter there subject to checking through records back at the post while the cyclists proceeded merrily toward unknown destinations.

While we do not consider the police activity at the roadside spot as being a search, to the extent, if any, that it might be called such it would bring into play the application of the "plain view" doctrine, "where a police officer is not searching for evidence . . . but nonetheless inadvertently comes across an incriminating object." Coolidge v. New Hampshire, 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971).

The officer having a legitimate ground for checking the serial number, United States v. Powers, 439 F.2d 373, 376 (4th Cir.), cert. denied, 402 U.S. 1011, 91 S.Ct. 2198, 29 L.Ed.2d 434 (1971), he could have proceeded to do so at that juncture with adequate probable cause. This, of course, would have involved the cross check with the hidden number which in turn would have brought about the arrest at the first point of contact. Rather than doing so along the edge of a busy interstate highway it was agreed to proceed to a safer place. This was consistent with the innocence of wrongdoing claimed by the defendants. In fact, Stout testified that Canesi seemed "quite surprised" when the matter of possible numerical altera-

tion was brought to the attention of the defendants.

We do not find an invasion of protected rights in the deferral to a place of safety of the check of the quasi-public identification numbers. Under the circumstances, proceeding down the highway to an appropriate place for the inspection was not an unlawful detention nor harassment of the cyclists.

Since the completion of the inspection was permissible at the point of first contact it did not become less so when and where actually conducted.

■ The third possible search and seizure did, of course, come closer to that status by the invasion of the saddle bag area, comparable to the glove compartment of an automobile, generally considered an area of increased privacy. *See*: United States v. Powers, *supra,* 439 F.2d at p. 375.

Here, however, the search was incident to a lawful arrest and its scope was within proper limits. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L. Ed.2d 685 (1969).

Zemke and Canesi also complain, however, that their rights were violated in that they were not advised that they need not consent to a search and therefore their agreeing to accompany the officer to the service station area was compulsively induced.

■ The theory here seems to be that Officer Stout at the roadside did not have any probable cause to go forward with his checking and therefore they were free to go their way unless they voluntarily agreed to accompany Stout after being informed of their rights not to do so. However, we do not treat this situation as one of waiver. Defendants claim that if they had been informed they need not consent nor accompany they would not have done so. If they had not, it appears equally clear to us that the completion of the cross check of the confidential number would have been consummated on the spot with the consequent arrest there rather than at the deferred situs. We cannot agree with the defendants that Officer Stout did not have a fully adequate basis for so doing when he first became aware of the appearance of alteration.

■ Finally, the defendants on this appeal argue that the court's instruction which permitted the jury to infer from the possession of recently stolen property that the defendants knew the property was stolen, unless satisfactorily explained, unconstitutionally, in violation of Fifth Amendment rights, burdened the defendants with the necessity of being witnesses against themselves.

There is no reason for setting the instruction out in full in this opinion as the first three paragraphs were taken almost verbatim (and admittedly by the district court) from United States v. Vanover, 339 F.2d 987, 992 (7th Cir. 1965), in which this court generally approved the instruction.

The district court, however, changed the wording of the fourth paragraph to read as follows:

"You will bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence. However, possession may be satisfactorily explained by facts and circumstances in evidence, independent of any testimony or other evidence from a defendant. It is your duty to determine whether the facts and circumstances shown by the evidence warrant any inference which the law permits you to draw from possession of recently stolen property. If any possession a defendant may have had of recently stolen property is consistent with innocence, then you should acquit such defendant."

This instruction, or the inference which it enunciates, is no stranger to this court or to other circuits and has been consistently approved. United States v. Bennett, 356 F.2d 500 (7th Cir. 1966), cert. den., 384 U.S. 975, 86 S.Ct. 1868, 16 L.Ed.2d 685; United States v. Meek, 388 F.2d 936 (7th Cir.), cert. denied, 391 U.S. 951, 88 S.Ct. 1855, 20 L.

Ed.2d 866 (1968); United States v. Angel, 201 F.2d 531 (7th Cir. 1953).

As this court stated in United States v. Teasley, 408 F.2d 1012, 1013 (7th Cir.), cert. denied, 396 U.S. 880, 90 S.Ct. 161, 24 L.Ed.2d 139 (1969):

> "It is well established, in this Circuit as in all the others, that the possession of a recently stolen vehicle gives rise to an inference of knowledge of its theft in the absence of a satisfactory explanation to the contrary."

We perhaps need give no further consideration to this claimed error since the defendants' objection on trial does not appear to raise the Fifth Amendment contention, unless we find it buried in the general assertions that the instruction "puts the burden of proof of innocence on the Defendants." This would questionably seem to meet the standard that "[n]o party may assign as error any portion of the charge or omission therefrom unless he objects thereto . . . stating distinctly the matter to which he objects and the grounds of his objection." Rule 30, Fed.R.Crim.P.

█ While we certainly should not seek constitutional issues where other grounds for disposition exist, *see:* United States v. Campos-Serrano, 404 U.S. 293, 92 S.Ct. 471, 30 L.Ed.2d 457, since the constitutional issue here is arguably before us and since the contention has apparently not been raised in the cited cases approving the inference, and the instruction based thereon, we deem it advisable to address ourselves to the matter, noting the apparent prevalence of use of this instruction.

The rationale of defendants' contention is that the existence of the inference is a constitutionally impermissible "chilling effect" on their Fifth Amendment right not to be compelled to testify since once the theft and possession are shown, they are in effect compelled to come forward and explain how it is that they had possession of recently stolen vehicles.

However, the defendants in our opinion misread the challenged instruction. It does not compel them to come forward with exculpatory evidence any more than would any other derogatory evidence by the state. What the defendants actually seem to be arguing is that an inference is somehow qualitatively different from other evidence, either testimonial or demonstrative. We see no basis on this point for distinction.

Thus the Government evidence disclosed several instances of lying on the part of the defendants to law enforcement officers concerning details of their claimed method of acquisition of the motorcycles. Carrying the contention of the defendants to its logical end would preclude such testimony as it would have the effect of compelling them to adduce explanatory or contradictory evidence.

█ In fact both defendants did take the stand and admit to lies. A strong case by the prosecution whether founded upon an inference from fact or other types of evidence often will produce the feeling in the accused that he should take the stand but that per se does not make such evidence violative of Fifth Amendment rights.

Further, the district court made the instruction even more clear as to lack of necessity for a defendant either to testify or adduce evidence than was the situation in *Vanover, supra,* by rephrasing the final paragraph as previously set forth herein. Also in addition to this, the district court gave the following instruction:

> "The burden is upon the Government to prove beyond a reasonable doubt the guilt, if any, of each defendant separately. This burden never shifts throughout the trial. The law does not require either defendant to prove his innocence or to produce any evidence in his defense. If the Government fails to prove a defendant guilty beyond a reasonable doubt, it will be your duty to acquit such defendant or defendants."

Instructions may be, and in complicated cases no doubt are, susceptible of misunderstanding by a lay jury but if they correctly set forth the applicable law the mere possibility of a strained and incorrect interpretation being put on a particular instruction should not preclude its use.

For the reasons set forth herein the judgments of conviction are affirmed.

Affirmed.