**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Wayne Joseph DOLLIOLE,
Defendant-Appellant.**

**No. 78–1697.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 12, 1979.

Decided April 20, 1979.

Certiorari Denied June 18, 1979.

See 99 S.Ct. 2894.

Carol A. Brook, Federal Defender Program, Chicago, Ill., for defendant-appellant.

Barry R. Elden, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS and SPRECHER, Circuit Judges, and EAST, Senior District Judge.*

SPRECHER, Circuit Judge.

The defendant, Wayne Dolliole, was convicted by a jury for the robbery of a federally-insured savings and loan association in violation of 18 U.S.C. § 2113(a), (d). The defendant appeals primarily on the ground that the trial court committed prejudicial error by admitting evidence of the defendant's participation in crimes other than the one charged.

### I.

The defendant was tried for aiding and abetting his brother-in-law, Darnell Collins, in the robbery of the Labe Savings and Loan Association. The first trial resulted in a hung jury. In the second trial the defendant was convicted and sentenced to seven years imprisonment.

Darnell Collins pled guilty to the Labe robbery and thus was not tried with the defendant. It is undisputed that Collins robbed Labe Savings and that the defendant drove him to and from there. The issue presented to the jury was whether the defendant intended to aid Darnell Collins in the robbery of the bank or whether he was merely an unknowing participant. The government presented two types of evidence to substantiate its case that Wayne Dolliole was a willing party to the Labe robbery. First, evidence of the circumstances surrounding the Labe Savings robbery was submitted to the jury. In addition, however, the United States introduced evidence suggesting that the defendant had also planned or participated in two prior bank robberies involving the Main and Hillside banks. This evidence was designed to bolster the government's contention that Dolliole had the requisite intent to commit bank robbery.

The evidence of the Labe robbery, consisted of the following testimony. On November 26, 1976 the defendant, age 23, drove his 18 year old brother-in-law, Darnell Collins, to the Labe Savings and Loan in the defendant's own silver 1955 Bentley. The defendant parked in the bank lot, turned off the engine, and remained in the car throughout the robbery. Collins entered the bank and gave a note and a folded bag to the teller. The teller testified that Collins opened his suit coat to reveal the handle of a gun. The teller gave Collins $1,123 including five bills with previously recorded serial numbers. Collins then returned to the Bentley and got into the back seat. The defendant drove the car about one mile before being stopped by the police.

Collins testified that about two weeks prior to the robbery at Labe Savings, the defendant had told him that he had found a bank that had no guard. The defendant also allegedly told Collins that the Bentley would be an "ideal" car for a robbery. Dolliole reasoned that since he looked Caucasian and the description of the robber would be black, if Collins would hide in the back seat while defendant drove, they would be able to avoid police suspicion.

Collins testified that after he robbed Labe Savings on November 26, he got into the car and hid on the floor of the back seat. He told the defendant to hurry because the teller had pressed the alarm. He also stated that while stopped at a light, he took some of the money out of the bag and reached up to show it to the defendant. Collins said that shortly thereafter the defendant told him that the police had gone by.

The government also introduced the testimony of two auto mechanics employed at an automobile repair shop located near the bank. The two men testified that they saw

---

* William G. East, Senior United States District Judge for the District of Oregon, is sitting by designation.

the 1955 Bentley approach a stop sign shortly after the robbery. They testified that they could see only one person in the car and that the car ran the stop sign. Both testified to seeing the Bentley proceeding slowly in the vicinity of Labe Savings a few days earlier.

Another witness testified that on the day of the robbery he heard police calls on his six-band radio, reporting that Labe Savings, located only four blocks north of his home, had been robbed by one male Negro who fled the scene in a silver Rolls Royce. After hearing the description he saw the described car stopped in heavy traffic in front of his home. The car had two occupants, and he observed a passenger in the back seat lean over the front seat "with what appeared to be something in his hand, it was—it was almost like he was playing cards." He also observed the occupants "slap hands, as if in approval" after a police car sped past them.

Another government witness testifying to the events of the Labe Savings robbery was the arresting officer. The officer testified that when he stopped the Bentley, he observed a man lying in the back seat with a gun and a bag in his hand. Both occupants were arrested, and it was later determined that the bag included the stolen, marked bills.

The defendant also testified to the circumstances surrounding the Labe Savings robbery. Dolliole stated that he did not plan to rob the bank and had no knowledge prior to his arrest that Collins had robbed the bank. The defendant claimed instead that he drove Collins to Labe Savings so that Collins could cash a money order. Other evidence, however, established that neither Collins nor Dolliole had any account at Labe and that Dolliole had to drive approximately 4½ miles to reach Labe Savings from his home. The defendant stated that when Collins came out of the bank he did not appear excited and that because the

front seat was ripped, Collins sat in the back seat, leaning on the arm rest.

The second category of evidence presented by the government consisted of prior acts of the defendant which tended to rebut his defense that he lacked the requisite intent. Testimony of Joseph Brinson was introduced to establish defendant's participation in an unconsummated plan to rob the Main Bank. Brinson stated that he played in a band with Darnell Collins and that Collins introduced him to the defendant. Brinson testified that, with Collins present, the defendant had outlined the plan for the robbery. Brinson was to rob the bank using a gun which belonged to Collins's brother, climb into the trunk of the Bentley, pull the lid shut with a string, and remain there while the defendant drove away. Brinson rehearsed getting into the trunk but decided not to go through with the robbery.

Darnell Collins also testified that defendant had actively planned to rob the Main Bank, although his testimony did differ from Brinson's concerning some of the details of the plan.[1] The defendant denied any participation in such a scheme.

Collins further testified that the defendant had aided him in the robbery of the Hillside Bank. Collins testified that Dolliole drove him to the Hillside Bank in a Ford Torino and that Collins robbed the bank and then hid on the floor of the back seat while Dolliole drove away. Although Collins had pled guilty to a charge of robbing the Hillside Bank, the defendant, Dolliole, has never been charged with the robbery. The only other evidence possibly relating to the robbery of Hillside was Brinson's statement that the defendant had admitted to him that he had previously robbed a bank in the suburbs.

The defendant denied any participation in the robbery of Hillside and adduced evidence to question Collins's credibility. Pri-

---

1. Collins testified that Dolliole began discussing the Main Bank robbery with Brinson immediately after their introduction, while Brinson testified there was a substantial time interval. Collins also testified that the plans included an attempt to appear as though they were shopping in a nearby grocery during the robbery. Brinson did not testify to this aspect of the plan.

or to trial, Darnell Collins had given five separate statements concerning the case. After his arrest for the Labe robbery, Collins told Chicago police that he and Dolliole had robbed the Labe and Hillside banks. At a subsequent date, the police told Collins that defendant had denied participation in both robberies and that they believed Collins was protecting a third party. Dolliole was present at this meeting with the police. Collins changed his statement and told the police that Johnny Davis, and not defendant, had been his accomplice in the Hillside robbery. In his third statement, made to the FBI and not in the presence of the defendant, Collins repeated the statement that Johnny Davis was his accomplice at Hillside and gave the FBI information relating to his identity and whereabouts. An agent testified that the FBI was unable to locate any Johnny Davis with the information given.

After signing a plea agreement for the Hillside and Labe robberies Darnell Collins made a fourth statement to the grand jury and a fifth at defendant's first trial, naming Dolliole as his accomplice in both the Hillside and Labe robberies. Collins also testified that he had made up the character of Johnny Davis to protect the defendant. Under the agreement, Collins promised to testify against the defendant in exchange for the government's agreement to make his cooperation known to the court. Collins was sentenced to four years incarceration under the Youth Corrections Act.

Finally, in a further effort to attack Collins's motivation, defense counsel sought to cross-examine Collins about other possible accomplices. Defense counsel asked Darnell if his brother Wilbert Collins had pled guilty to a bank robbery. Defense counsel also sought to cross-examine Collins about his girlfriend, Sharon Davis, to determine if she had a brother named Johnny. The court sustained the government's objection to both lines of questioning because defense counsel did not proffer evidence to establish relevancy.

## II.

The defendant argues principally that the introduction of evidence relating to his alleged participation in the Main and Hillside incidents was impermissible under the Federal Rules of Evidence and highly prejudicial. Defendant also claims that he was improperly denied the opportunity to cross examine Collins about other possible accomplices to the Hillside robbery. We reject both arguments of the defendant and affirm the conviction.

Rule 404(b) of the Federal Rules of Evidence permits the admission of evidence of prior crimes if it is offered to prove criminal intent rather than merely to prove criminal disposition.[2] Dolliole does not dispute that the evidence of prior participation in bank robberies is relevant to the question of whether he intended to act as an accomplice to Collins in the Labe robbery. He does contend however that the admission of the Main and Hillside evidence was improper under the rules because it was not necessary to the government's case, because the judge did not specifically enter findings that the probativeness of the evidence outweighed its prejudice, and most importantly because it was not "clear and convincing."

All three of these arguments forwarded by the defendant are based on Federal Rule of Evidence 403, which provides for the exclusion of relevant evidence:

> if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Rules 403 and 404 do not represent a "mechanical solution" and the courts have been instructed to apply these rules with refer-

---

2. Rule 404(b) provides:

> Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

ence to "facts appropriate for making decision[s] of this kind . . . ." Advisory Committee Note to Rule 404(b).

■ Addressing the defendant's first argument, we note that Rule 403 does require the trial judge to balance the probative value of the evidence against its potential for unfair prejudice. Accordingly, the practice of entering a written finding as to this balance should definitely be encouraged. *Cf. United States v. Mahone,* 537 F.2d 922, 929 (7th Cir.), *cert. denied,* 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976). The failure to enter such a finding, however, should not mandate a reversal of the conviction. The Ninth Circuit recently rejected an invitation to impose the requirement stating:

> Although a clearer statement of the process of balancing probativeness and prejudice might have been desirable, we refuse to require a mechanical recitation of rule 403's formula on the record as a prerequisite to admitting evidence under rule 404(b). As long as it appears from the record as a whole that the trial judge adequately weighed the probative value and prejudicial effect of proffered evidence before its admission, we conclude that the demands of rule 403 have been met.

*United States v. Sangrey,* 586 F.2d 1312 (9th Cir. 1978). The transcript reveals that the trial judge gave consideration to the question but found that the evidence was properly admissible on the issue of intent.

■ Nor do we accept the defendant's second argument that the admission of prior crime evidence was so unnecessary to the government's case that it was error to admit it. The Advisory Committee Notes to Rules 403 and 404(b) do envision that need for the evidence is an appropriate consideration in the balancing of probity against prejudice. The Rule 403 advisory note states that this balance must be derived "in view of the availability of other means of proof . . . ." Cases in this and other circuits, both before and after the 1975 version of the rule, indicate the usefulness of assessing the government's need for the evidence. *United States v. Ostrowsky,* 501 F.2d 318 (7th Cir. 1974); *United States v. Fosher,* 568 F.2d 207, 213 (1st Cir. 1978); *United States v. DiZenzo,* 500 F.2d 263, 266 (4th Cir. 1974). When the government has ample evidence to establish an element of the crime, the probative value of the prior crime evidence is greatly reduced, and the risk of prejudice which accompanies the admission of such evidence will not be justified.[3] It is of course not easy to formulate precisely when the quantum of evidence eliminates the need for the prior crime evidence. In this case the government presented other evidence that Dolliole intended to participate in the Labe robbery: Collins's testimony and the circumstances of the crime. Nonetheless, "[w]hile a jury might draw the inference" from only this evidence that the defendant intended to assist in the robbery, the prior crime evidence contributes to "more dependable proof of his knowledge and intent" and was therefore "reasonably necessary" to the government's case. *United States v. DiZenzo,* 500 F.2d at 266.

Just as the necessity of the prior crime evidence is a component of balancing probity and prejudice, so is its reliability. This circuit, as well as others, conditions the admission of prior crime evidence on a finding that such evidence is clear and convincing. *United States v. Dixon,* 596 F.2d 178 (7th Cir. 1979); *United States v. Ostrowsky,* 501 F.2d 318 (7th Cir. 1974); *United States v. Drury,* 582 F.2d 1181, 1184 n.6 (8th Cir. 1978); *United States v. Goehring,* 585 F.2d 371 (8th Cir. 1978); *United States v. Herrell,* 588 F.2d 711 (9th Cir. 1978).

We agree with the government that the grounds stated in Rule 403 are the sole grounds for the exclusion of relevant evi-

---

**3.** "Probative value," as used in Rule 403 is a relative measurement. "It is the incremental probity of the evidence that is to be balanced against its potential for undue prejudice." *United States v. Beechum,* 582 F.2d 898, 914 (5th Cir. 1978) (en banc).

dence.[4] Properly understood, however, the requirement that prior crime evidence be excluded if it is not clear and convincing does not expand the Rule 403 grounds for exclusion. It merely states the conclusion derived from repeated application of Rule 403, that unless the prior crime evidence is clear and convincing its probative value simply cannot justify its potential for prejudice.[5]

In applying the Rule 403 standard, the appellate court is obligated to afford substantial deference to the evidentiary ruling of the trial court. *United States v. Weidman,* 572 F.2d 1199, 1201 (7th Cir. 1978). In this case the judge explicitly found that the prior crime evidence was clear and convincing if believed by the jury. Further, he gave a limiting instruction to the jury which directed them to consider the prior crime evidence as indicative of defendant's intent to rob Labe Savings only if they found that evidence to be clear and convincing.

We do not believe that the trial judge abused his discretion in applying this standard. The government substantiated the defendant's participation in the Main robbery plan by the testimony of two accomplice witnesses. That testimony was essentially unimpeached.[6] The evidence of the defendant's participation in the Hillside robbery was less extensive. Only Collins was called to testify that the defendant was his accomplice in the Hillside robbery. Collins's testimony was uncorroborated,[7] and was also impeached by his two prior inconsistent statements, which he explained as an attempt to protect the defendant.

Nonetheless, we cannot conclude that the trial judge abused his discretion in concluding that this evidence was sufficiently clear and convincing to be submitted to the jury. The function of the clear and convincing standard is generally not to shift the responsibility for credibility determinations from the jury to the judge. Rather, it is designed principally to prevent the jury from exposure to or consideration of evidence that establishes the defendant's participation in the prior crime only by highly circumstantial inferences. Direct testimony of the defendant's participation in a prior crime, in contrast, is ordinarily held to satisfy the clear and convincing standard. *United States v. Dixon,* —— F.2d ——, No. 77–1397 (7th Cir. 1979); *United States v. Drury,* 582 F.2d 1181, 1184–85 (8th Cir. 1978); *United States v. Trevino,* 565 F.2d 1317 (5th Cir. 1978); *United States v. Cyphers,* 553 F.2d 1064, 1070 (7th Cir. 1977). It is of course possible that other circumstances may render such testimonial evidence so incredible as not to satisfy the clear and convincing standard. In such a case the jury should not be exposed to the prejudice inherent in such evidence. The trial court found, however, after hearing Collins's testimony in two trials, that this standard for admission had been satisfied.

The fact that the Hillside evidence consisted of uncorroborated accomplice testimony makes it no less a credibility question, first for the trial court and then for the jury. *United States v. Trevino,* 565 F.2d at 319. Cf. *United States v. Adams,* 454 F.2d 1357, 1360 (7th Cir. 1972), *cert. denied,* 405 U.S. 1072, 92 S.Ct. 1523, 31 L.Ed.2d 805 (1972) (testimony of uncorroborated accomplice, as to whom charges were dismissed, sufficient to support conviction). Nor do

---

4. The Senate Committee Report states:
   [T]he use of the discretionary word "may" with respect to the admissibility of evidence of crimes, wrongs, or acts is not intended to confer any arbitrary discretion on the trial judge. Rather, it is anticipated that with respect to permissible uses for such evidence, the trial judge may exclude it only on the basis of those considerations set forth in Rule 403, i. e. prejudice, confusion or waste of time.
   S.Rep.No.93–1277, 93d Cong., 2d Sess. 24–25, reprinted in [1974] U.S.Code Cong. & Admin. News, pp. 7051, 7071.

5. To our knowledge, only the Fifth Circuit has interpreted the 1975 amendments to require a change in pre-amendment principles. *United States v. Beechum,* 582 F.2d 898 (5th Cir. 1978) (en banc).

6. See note 1 *supra* for the extent of the inconsistencies.

7. Brinson did testify that Dolliole admitted robbing a bank in the suburbs. Brinson also conceded however that Dolliole had never identified the suburban bank as Hillside.

we think that the impeachment in this case was of such a character that the defendant's participation in the Hillside robbery could not have been convincingly established. *Cf. United States v. Infelice,* 506 F.2d 1358, 1364 (7th Cir. 1974), *cert. denied,* 419 U.S. 1107, 95 S.Ct. 778, 42 L.Ed.2d 802 (1975). As we stated in *Cyphers* : "If the witness was to be believed, his testimony was sufficiently clear and convincing regarding [the defendant's] involvement in the [prior crime]" to meet the clear and convincing standard of proof. 553 F.2d at 1070.

We are unable to find any grounds for concluding that despite the clear and convincing character of the evidence its inherent potential for unfair prejudice outweighs its established probative value. "Unfair prejudice" is defined by the Advisory Note to Rule 403 as " 'an undue tendency to suggest decision on an improper basis.' " We do not think that the nature of the Hillside or Main evidence subjected the defendant to a substantial risk that he would be convicted for the Labe robbery in place of his unindicted crimes. For instance, if the jury believed Collins's uncorroborated testimony that the defendant had participated in the robbery of the Hillside Bank, then it seems unlikely that they would have disbelieved Collins's corroborated testimony that defendant aided him in the robbery of Labe Savings. Therefore it seems unlikely that the defendant was found guilty of any crime other than the one charged. Nor do we believe that this evidence was of the variety that would have encouraged the jury to convict the defendant for evil character rather than for committing the elements of the charged offense. In addition, we note that the judge took the precaution of giving the jury a limiting instruction to prevent prejudice. We therefore affirm the trial court's conclusion that the risk of unfair prejudice did not outweigh the probative value of the evidence.

 We also do not believe that the trial court erred in the other evidentiary rulings challenged by defendant. The trial judge carefully considered the rulings and we cannot conclude that he abused his discretion. Defense counsel was offered the opportunity, but admitted inability to make any offer of proof to establish the relevancy of the various lines of questioning denied by the trial judge.[8] Further, the trial court properly refused the defendant's request to compel nonexculpatory statements of witnesses before trial. 18 U.S.C. § 3500(a).

Since the evidence in this case was properly admitted and fully supports the verdict, the judgment is

AFFIRMED.

---

8. Defense counsel admitted that she had no evidence that Darnell Collins and his brother ever collaborated on a bank robbery. She also admitted that she had no evidence that Sharon Davis had a brother named Johnny.