**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James FALCO, Defendant-Appellant.**

**No. 83–1942.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 7, 1983.

Decided Feb. 13, 1984.

Rehearing Denied March 16, 1984.

---

Gerald M. Werksman, Chicago, Ill., for defendant-appellant.

Maureen DeMaio, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before WOOD and CUDAHY, Circuit Judges, and CAMPBELL, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Defendant-appellant James Falco appeals from his conviction for knowingly possessing goods stolen from interstate commerce in violation of 18 U.S.C. § 659 (1976). Appellant's only contention on appeal is that the district court erred and abused its discretion in allowing the government to introduce in its case in chief appellant's four prior felony convictions for crimes involving possession of stolen property to help prove appellant's knowledge that the goods were stolen here. Because we believe the district court did not err and properly exercised its discretion in admitting the prior convictions, we affirm the district court's decision.

## I.

In late January, 1981, a trailer containing 2,820 cartons of plastic tobacco plant covering was stolen from the Arco Durethene Plastics Company (Arco) loading dock in west Chicago. The evidence offered by the government tended to show that defendant Falco had approached Tony Zolner, an independent broker of liquidated property, in early February and asked Zolner to assist him in selling 2,800 cartons of plastic sheeting. Zolner agreed and in return was to share in any of the proceeds from sales of the plastic in excess of $7,000. Zolner contacted the Service Warehouse and Distributing Company (Service Warehouse) to see if it had room to store the merchandise. Service Warehouse told Zolner that it could accept such a quantity of goods, which Zol-

---

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

ner said would be delivered by a friend. On February 12, 1981, defendant delivered the plastic into storage at Service Warehouse. Defendant had no bill of lading for the plastic he delivered there.

Zolner arranged to sell 200 cartons of the plastic to Arthur Lewis Company, which bought and sold wholesale merchandise for profit. On February 20, 1981, defendant returned to Service Warehouse to pick up the cartons and delivered them to Arthur Lewis Company. Defendant first asked that payment be made in cash, but when Arthur Lewis, who owned the company, declined, defendant suggested that Lewis write a check payable to defendant personally or to Hawk Enterprises (defendant's nickname was "Hawk"). Lewis declined and called Zolner and told him he refused to make payment to defendant personally. Zolner told Lewis to make a check payable to Zolner, which Lewis did.

On February 23, one of Lewis' associates called Arco to determine an appropriate price at which to sell the plastic. After receiving this call and recognizing the goods referred to as the ones that had been stolen, Arco notified the FBI. Conversations with Lewis and Zolner led the FBI to Service Warehouse. Shortly before the agents arrived, however, defendant had already removed the remaining cartons. On March 4, the FBI interviewed defendant, who told them that a trailerload of the plastic was in the parking lot at the Lyons Inn Restaurant in Lyons. The FBI found the trailer the next day at that location with 1,911 cartons of plastic still in it. The trailer had been rented on January 14, 1981, by Harry Blyskal, whose trucking companies had hauled loads for Arco in the past.

Defendant, who did not testify, offered evidence that contradicted the government's version of events. Defendant's evidence tended to show that defendant was hired by Blyskal as a truck driver in late January or early February, 1981, and that he came into possession of the merchandise in the ordinary course of his work. The delivery on February 12 was made after defendant was told by Blyskal to pick up a trailer in Lyons and deliver it to Service Warehouse. The delivery request had been made by Zolner. Defendant delivered the trailer and, after the trailer was unloaded the next day, returned it to where he had picked it up.

On February 20, Zolner called Blyskal and asked for the use of a driver only. Although Blyskal did not ordinarily lease drivers, he did so on this occasion because business was slow. Blyskal told defendant that Zolner wanted a driver to take one of Zolner's trucks to Service Warehouse to pick up 200 cartons of plastic and deliver it to Arthur Lewis Company, at which time Lewis was to pay defendant in cash for the goods. Defendant made the delivery, but when he asked Lewis to pay for the merchandise in cash, Lewis refused. Instead, Lewis gave defendant a check payable to Zolner. Not until February 23, when the trailer rented by Zolner from Blyskal had already been loaded, did defendant learn that the cartons of plastic were "hot." It was Zolner who told defendant that the goods were stolen and who requested defendant to drive the load to a lot near Zolner's in Lyons, which defendant did.

## II.

Section 659 of Title 18, 18 U.S.C. § 659 (1976), makes it a federal offense for an individual to possess goods shipped in interstate commerce that the individual knows were stolen. To convict someone under the statute, the government must show:

(1) that the chattels were stolen, (2) that they had a value in excess of $100, (3) that defendant[ ] had possession of the chattels, (4) that possession was with knowledge that the chattels were stolen, and (5) that the chattels were part of an interstate shipment.

*United States v. Henneberry,* 719 F.2d 941, 945 (8th Cir.1983).

The only issue in dispute in this case was whether defendant had knowledge that the goods were stolen. In an effort to establish this element, the government moved *in limine* to permit it to introduce in its case in chief evidence of defendant's prior inter-

state theft convictions, two of which occurred in 1952, one in 1962, and one in 1978.[1] The government argued that the prior convictions were admissible under Rule 404(b) of the Federal Rules of Evidence, which permits the introduction of evidence of "other crimes, wrongs, or acts" if the evidence is relevant for a purpose other than showing a propensity for "bad" or criminal character and if the evidence is not so prejudicial as to be excludable under Rule 403. Rule 403 allows the trial court to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." Rule 403, Fed.R.Evid.

The district court ruled that the convictions were admissible under Rules 404(b) and 403. *United States v. Falco,* No. 82 CR 213 (N.D.Ill. Jan. 5, 1983) (Order). At trial, the court allowed the government to read each of the convictions and portions of the corresponding complaint to the jury. It is from the district court's ruling permitting the introduction of the prior convictions that defendant appeals.

### III.

Because defendant challenges the admission of the prior convictions on the basis of both Rules 404(b) and 403, we must analyze the district court's conclusions regarding both the relevance of the evidence and its probative value in relation to its tendency to promote unfair prejudice. *United States v. Serlin,* 707 F.2d 953, 959 (7th Cir.1983). Our first concern is whether the district court erred in concluding that the prior convictions were relevant to the issue of defendant's knowledge under Rule 404(b). Evidence is relevant if it has "any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Rule 401, Fed.R.Evid. If the prior convictions are relevant, we must then determine whether

the district court abused its discretion in deciding that the probative value of the prior convictions was not substantially outweighed by their prejudicial impact under the dictates of Rule 403. The probative value of the evidence is measured by the extent to which it makes the existence of a fact in issue more or less likely. The prejudicial impact of the evidence is measured according to the extent to which the jury might consider the evidence for purposes other than for what it was intended; this usually occurs when the evidence is likely to arouse the jury's emotions.

### A. Relevance.

The use of the prior convictions here related circumstantially to the critical element of defendant's knowledge. The government argues that defendant was more likely to have knowledge that the goods were stolen in the present case because he had knowledge of stolen goods on previous occasions. Defendant argues that the mere fact that he was previously convicted for crimes involving knowledge of stolen property is not probative of knowledge here unless the facts underlying the previous convictions are similar to the facts in this case. Although defendant recognizes that numerous courts have admitted the bare bones fact of a prior conviction to demonstrate knowledge in a subsequent case, *see, e.g., United States v. Olsen,* 487 F.2d 77 (8th Cir.1973), *cert. denied,* 415 U.S. 993, 94 S.Ct. 1594, 39 L.Ed.2d 890 (1974), he contends that it is the similarity of events that makes the fact of a prior conviction probative. Defendant maintains that it is the government's burden to pinpoint the relevance of the previous convictions by revealing the facts underlying each of the prior convictions pertinent to the issue of knowledge and relating them to the facts of this case, and that this burden has not been satisfied.

| 1. Year of previous conviction | Statute involved | Goods possessed (as stated in the complaints) |
|---|---|---|
| 1952 | 18 U.S.C. § 659 | 31,050 pounds of meat |
| 1952 | 18 U.S.C. § 659 | 20,000 pounds of meat |
| 1962 | 18 U.S.C. § 659 | 7 camping tents |
| 1978 | 18 U.S.C. § 2315 | 1952 cartons of stereo receivers |

We have previously recognized that the "similarity" of prior or subsequent acts is a useful touchstone for assessing relevancy under Rule 404(b). *See, e.g., United States v. Wormick,* 709 F.2d 454, 459 (7th Cir. 1983); *United States v. Feinberg,* 535 F.2d 1004, 1009 (7th Cir.1976), *cert. denied,* 429 U.S. 929, 97 S.Ct. 337, 50 L.Ed.2d 300 (1977). This recognition, however, has occurred in contexts in which the evidence consisted of testimony regarding the circumstances underlying the prior criminal conduct or bad acts, rather than the mere fact of conviction. *See, e.g., Wormick,* 709 F.2d at 459. As far as we know, this is the first time that we have addressed the admissibility of a certification of a prior conviction under Rule 404(b) in this circuit. The question of relevancy here does not turn on the "similarity" of prior events in the way it might if testimony of prior or subsequent acts, rather than certifications of convictions for the same or related statutory offenses, were involved. Similarity of the underlying facts of the crimes is not the only basis on which the prior convictions could be considered relevant. Rather, extrinsic evidence in the form of convictions may be relevant on the issue of knowledge if, apart from facts demonstrating the similarity of the physical elements of the acts that gave rise to the inference of knowledge in the prior or subsequent convictions, the extrinsic offenses represented by the convictions are "of such a nature that [their] commission involved the same knowledge required for the offense charged." *United States v. Beechum,* 582 F.2d 898, 912 n. 15 (5th Cir. 1978) (en banc) (dictum), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

We recognize that the probative value of the previous convictions would be enhanced and their relevance thus more readily established if the facts underlying those convictions that go to the issue of knowledge were similar to the facts in this case. Obviously, "the greater the similarity of the prior act to the present offense, the less tenuous the logical inference that may be drawn from the prior act regarding knowledge or intent." *United States v. Mehrmanesh,* 689 F.2d 822, 831 (9th Cir.1982) (citation omitted). Our inquiry at this point, however, is directed not toward assessing the overall probative value of the prior convictions on the issue of knowledge, but rather toward deciding whether the probative value of the prior convictions is sufficient to satisfy the threshold requirement for evidence to be considered relevant. *Beechum,* 582 F.2d at 913. Defendant was free to attempt to undercut the probative value of the prior convictions, and hence their relevance, by distinguishing the facts underlying the previous convictions in response to the government's motion to admit. By failing to proffer such evidence, however, defendant allowed the determination of the relevance of the prior convictions to turn solely on whether the fact that defendant had previously been convicted of the same or similar statutory offense requiring knowledge of stolen goods[2] was minimally probative on the issue of defendant's knowledge in this case.[3]

In concluding that the prior convictions were at least minimally probative of, and hence relevant to, defendant's knowledge in this case, the trial court explained:

In this case the prior convictions are offered to show that Falco was familiar with transactions in stolen merchandise. This evidence is probative because it suggests that *Falco would have recognized the characteristics of a shipment of stolen goods and therefore was likely to know*

---

**2.** Defendant's two 1952 convictions and the 1962 conviction involved the same statute—18 U.S.C. § 659—as defendant was charged with violating here. Defendant's 1978 conviction involved a related statute, 18 U.S.C. § 2315. Each of the statutes required that the defendant have knowledge that the goods were stolen.

**3.** Defendant's failure to undercut the probative value of the prior convictions by distinguishing their underlying facts also made it less likely, of course, that the trial judge would exclude the prior convictions on the basis of Rule 403, which requires the court to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

*that the goods he transported were stolen.* A single twenty-year-old conviction might lack probative value, but a history of four convictions relating to stolen merchandise, the most recent being five years old, demonstrates repeated contact with stolen merchandise over several years . . . .

The statutes under which Falco was [previously] convicted, 18 U.S.C. §§ 659 and 2315, require knowledge that goods are stolen or the intent to steal them. The convictions are competent evidence to prove that Falco knowingly has dealt in stolen merchandise. Some probative value is lost when the Government does not offer evidence of the circumstances underlying the conviction, as is usually done. On the other hand, probative value is increased by the certainty carried by proof of a conviction; many cases admit evidence of other wrongful acts which is weaker because of significant uncertainty in the proof of those wrongful acts. Especially in view of the obstacles to obtaining more detailed evidence of twenty- and thirty-year-old crimes, I believe that the Government should be permitted to prove Falco's past crimes by proof of his convictions.

(Emphasis added.)

The line of reasoning implicitly followed by the district court is that:

(1) there are special characteristics or techniques associated with the possession of stolen goods that a person who possesses and knows the goods were stolen is likely to know; such that

(2) once these characteristics or techniques are known, the person will likely be aware of them in a subsequent shipment or transaction of stolen goods; and

(3) therefore make it more likely that the person knows that the goods in the later shipment or transaction were stolen.

We cannot say that this line of reasoning is untenable, especially in light of the number of times that defendant here was connected with goods that he knew were stolen on previous occasions. In *United States v. Fairchild,* 526 F.2d 185 (7th Cir.1975), *cert.*

*denied,* 425 U.S. 942, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976), we stated that evidence of other criminal transactions is relevant and admissible under Rule 404(b) "if . . . *it has a tendency to make the existence of an element of the crime charged more probable than it would be without such evidence." Id.* at 188–89 (emphasis added). We believe that the pattern of defendant's repeated contact with and knowledge of stolen goods has a tendency to make the existence of defendant's knowledge that the goods here were stolen more probable than it would be without such a pattern of conduct. Because of defendant's numerous exposures to stolen goods with knowledge that the goods were stolen, we think the general assumption relied on by the district court has validity sufficient to sustain the inferences and hence the minimal probative value necessary to satisfy the relevance requirement. *See, e.g., United States v. Naylor,* 705 F.2d 110, 111–12 (4th Cir.1983); *United States v. DeFillipo,* 590 F.2d 1228, 1240 (2d Cir.), *cert. denied,* 442 U.S. 920, 99 S.Ct. 2844, 61 L.Ed.2d 288 (1979); *United States v. Mehrmanesh,* 689 F.2d 822, 831 & n. 10 (9th Cir.1982); *see also United States v. Askew,* 584 F.2d 960, 963 (10th Cir.1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979). That the probative value of the prior convictions on the issue of knowledge requires more than a single inference does not, of course, impugn its relevance so long as the connections are not entirely attenuated. "The length of the chain of inferences necessary to connect the evidence with the ultimate fact to be proved necessarily lessens the probative value of the evidence, and may therefore render it more susceptible to exclusion as unduly confusing, prejudicial, or time-consuming, but it does not render the evidence irrelevant." *United States v. Ravich,* 421 F.2d 1196, 1204 n. 10 (2d Cir.), *cert. denied,* 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970).

Defendant argues that whatever probative value might otherwise be gained from the *number* of times defendant was previously convicted is undercut by the *staleness*

of the convictions.[4] Two of the convictions occurred in 1952, one in 1962, and one in 1978. In addressing this contention, the district court stated:

> On the facts presented here, I do not believe that the age of Falco's convictions is a good reason for excluding them. It is true that many cases refer to a requirement that other wrongful acts be close enough in time to be relevant and probative. In this case the prior convictions are offered to show that Falco was familiar with transactions in stolen merchandise. This evidence is probative because it suggests that Falco would have recognized the characteristics of a shipment of stolen goods and therefore was likely to know that the goods he transported were stolen. A single twenty-year-old conviction might lack probative value, but a history of four convictions relating to stolen merchandise, the most recent being five years old, demonstrates repeated contact with stolen merchandise over several years. The probative value of these convictions is not weakened by the time span involved.

We agree with the reasoning of the district court. It is the pattern of conduct represented by the prior convictions, and not the age of each separately considered, that is critical to their relevance here. Despite the gaps between the convictions,[5] a pattern emerges that tends to establish defendant's familiarity with transactions or shipments of stolen goods that makes it more probable that defendant knew the goods in this case were stolen.

**B. Probative Value versus Prejudicial Impact.**

■ Although we conclude that the prior convictions are relevant on the issue of knowledge, we must decide whether the district court abused its discretion in concluding that the convictions were not excludable under Rule 403. Defendant argues that the district court abused its discretion in finding that the probative value of the prior convictions, which defendant contends was minimal, was not substantially outweighed by their prejudicial value. The trial court's balancing of the probative value and unfair prejudice is within its sound discretion and must be "accorded great deference." *Serlin,* 707 F.2d at 959.

Defendant makes two related arguments attacking the district court's failure to exclude the prior convictions under Rule 403. First, defendant maintains that even if the prior convictions are relevant, admitting all four of them was unnecessary and distorted the purpose for which the convictions were offered so as to make them unduly prejudicial. Defendant's argument essentially is that whatever incremental probative value may have been gained by admitting four prior convictions rather than one was substantially outweighed by the incremental prejudicial effect of four prior convictions rather than just one. As we stated in *United States v. Dolliole,* 597 F.2d 102 (7th Cir.), *cert. denied,* 442 U.S. 946, 99 S.Ct. 2894, 61 L.Ed.2d 318 (1979), " 'Probative value,' as used in Rule 403 is a relative measurement. 'It is the incremental probity [sic] of the evidence that is to be balanced against its potential for undue prejudice.' " *Id.* at 106

---

4. Unlike Rule 609, which permits the use of evidence of prior convictions to impeach the credibility of a witness, Rule 404(b) does not place a limit on the age of the conviction. Although some commentators have suggested that the limit in Rule 609 ought to be imported to limit the age of convictions or bad acts introduced under Rule 404(b), *see, e.g.,* 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 404[09] at 404–48 (1976), the drafters of the rule apparently contemplated no such result, since no limit was prescribed other than as might be required by the general constraints of relevancy and unfair prejudice. *See United States v. Rubio-Gonzalez,* 674 F.2d 1067, 1075

(5th Cir.1982) ("evidence admitted under Rule 404(b) is not controlled by the ten-year limit specified in Rule 609(b), which applies to the quite different matter of admitting evidence of prior convictions to impeach a witness").

5. The gaps are not as significant as one might suppose, given that defendant was incarcerated during much of the time between his earlier two convictions; defendant was sentenced to 10 years imprisonment for the 1952 offenses, 2 years for the 1962 offense, and 6 months for the 1978 offense.

(quoting *Beechum,* 582 F.2d at 914).[6] We have already determined, however, that the relevance of the prior convictions depends on their being considered together, so that we do not have a situation in which the incremental probative value of each can be weighed against the resulting incremental prejudicial effect. Rather, because the probative value and relevance of the prior convictions depend on their being considered together, the balancing under Rule 403 has to be a weighing of the probative value of the prior convictions considered collectively against their collective prejudicial effect.

Defendant also contends, therefore, that even if the admissions of the prior convictions were all necessary, the unfair prejudice stemming from them collectively was sufficient, in light of their slight probative value on the issue of defendant's knowledge, so that it was an abuse of discretion for the district court not to exclude them under Rule 403. Although we believe the trial court here would have been justified in excluding the prior convictions had it chosen to do so, because of the danger that the jury would focus on the convictions as tending to show a propensity for crime by defendant that would obscure the issue of defendant's knowledge, we cannot say that the trial court abused its discretion in admitting the convictions. The trial court is given wide discretion in undertaking the balancing required by Rule 403, and we will not restrike the balance unless the trial

court has clearly abused that discretion. Here, the trial court properly assessed the probative value of the evidence and recognized its prejudicial effect, and went on to observe:

> Knowledge that the subject goods were stolen will be an important element of proof in the Government's case. Evidence that Falco transported and delivered stolen merchandise does not lead readily to the inference that he knew the merchandise was stolen. It is important that the jury have the benefit of this competent and probative evidence of Falco's experience with stolen merchandise. There always is a possibility of unfair prejudice when evidence of other crimes is introduced, but on these facts I conclude that the possibility of such prejudice does not outweigh the probative value of the proffered evidence.

■ The trial court's consideration of the amount of corroborative evidence available to the government is entirely proper as part of the balancing required by Rule 403. *Dolliole,* 597 F.2d at 106. In addition, the trial court minimized the prejudicial effect of the evidence by making clear to the jury immediately after the evidence was read into the record and again in the jury instructions that the prior convictions related solely to the issue of whether defendant knew that the goods were stolen.[7] Under

---

**6.** In making this argument, defendant relies on *United States v. Ostrowsky,* 501 F.2d 318 (7th Cir.1974). The particular concerns voiced in *Ostrowsky,* however, do not pertain to the evidence admitted here. In *Ostrowsky,* we reversed the convictions of several defendants on trial for interstate transportation of a stolen motor vehicle because we concluded that many of the details elicited at trial relating to evidence of the murder of the possessor of the automobile at the hands of one of the defendants, which was admitted to prove knowledge in the motor vehicle theft case, were unnecessary and irrelevant and resulted in unfair prejudice to the defendants. In effect, the *Ostrowsky* court was saying that the additional detailed evidence had *no* incremental probative value. *Id.* at 323. In this case, however, the probative value of the prior convictions cannot be considered incrementally, since we have already determined that it is the collective proba-

tive value of the prior convictions that makes them relevant in the first place.

**7.** Immediately after the convictions and portions of the corresponding indictments were read into evidence, the trial court cautioned the jury as follows:

> THE COURT: All right. Now, ladies and gentlemen, these prior convictions that have been admitted have been admitted on only one issue, and that's the issue of whether the defendant knew that the materials involved in this case were in fact stolen. It's limited to that issue only.

> .     .     .     .     .

> In other words, you should not say: Well, he has been convicted four times, and therefore he is guilty of the fifth. We don't admit the prior convictions for that purpose. It is a very limited purpose. It goes to knowledge and intent, that issue. So it would be im-

the circumstances, we cannot say that the district court abused its discretion. The evidence was relevant and necessary to the government's case, and the district court minimized its prejudicial impact. Despite the possibility of unfair prejudice stemming from the admission of four prior convictions, the district court's conclusion that this possibility did not substantially outweigh the probative value of the convictions is not unreasonable.

## IV.

For the reasons stated above, we affirm the district court's decision to admit the evidence of defendant's prior convictions.

CUDAHY, Circuit Judge, dissenting.

Judge Wood for the majority has fairly presented the factual circumstances, as well as most of the relevant policies, bearing on the admissibility of prior convictions' evidence in this case. Upon reflection, however, I believe that the balance between probative value and prejudice is so lop-sided in the direction of unfair prejudice that I would reverse the conviction and remand for a new trial.

The basic problem both in the argument of the district court here and of the majority is that the special circumstances and characteristics of a stolen shipment of interstate goods that give rise to the possessor's knowledge that the goods were stolen are not universal but, of course, vary sharply from case to case. In one case, a possessor's knowledge that the goods were stolen may derive from his active participation in hijacking the goods, while in another it may come from being told to deliver stolen goods to a fence. Proof in the first instance might include testimony that the hijacker was found driving the truck with the original driver bound and gagged in the back. Proof in the second case might in-

clude testimony that the driver had no bill of lading and asked for payment in cash. In these examples, therefore, the underlying facts that would allow the trier of fact to infer knowledge in each case are different. One could not reasonably infer that the possessor in the second case knew the goods were stolen from the mere fact that he had knowledge under the facts of the first case, since the respective facts that give rise to the inference of knowledge in each case are totally different.

The problem with introducing only a certificate of a prior conviction under the same criminal statute is that it says nothing about the facts underlying the conviction. In some instances, of course, the facts underlying the conviction may be unnecessary because the mere fact of a prior conviction alone may be highly probative of an element in a later case. For example, if a person were convicted of possession of cocaine and was similarly charged on a later occasion, a defense that the person did not know what the substance was would be undercut by the fact of the prior conviction. Here, however, the contested issue is whether the defendant *knew that these particular goods were stolen*. Unless the prior convictions involved circumstances similar to those from which defendant's knowledge could be inferred here, they have little if any probative value on that issue and must be considered of only the most marginal relevance.

Numerous courts have, of course, admitted certifications of prior convictions to establish knowledge, intent, and so on in a subsequent case. Some of these courts, while expressing reluctance to admit such evidence, have felt bound to do so by precedent. *See, e.g., United States v. Mehrmanesh,* 689 F.2d 822, 831 (9th Cir.1982) ("[N]owhere has [the government] specifically established which facts such evidence is relevant to show, nor has it articulated

proper for the jury to say: One, two, three, four, therefore, five. That would not be proper.

Similarly, the trial court made clear in the jury instructions the limited use for which the prior convictions could be considered:

You have heard evidence that the defendant was convicted of crimes other than that charged in the indictment. You may consider this evidence only on the question of knowledge or intent. This evidence is to be considered by you only for this limited purpose.

the hypotheses by which the jury could infer such facts from the proffered evidence[;] ... [n]evertheless, prior cases in this Circuit compel us to conclude that there is at least some logical connection, however weak, to a central element in this case ....."). Unfortunately, I believe that this tendency in the cases shows "a reluctance to attempt a logical analysis of other crime evidence, and an overreliance upon the result reached in legal precedent as a complete solution to problems of admissibility." Trautman, *Logical or Legal Relevancy—A Conflict in Theory,* 5 VAND.L.REV. 385, 409 (1952). Although I can conceive of instances in which the mere fact of a prior conviction may tend in a significant way to prove an element of the crime and not merely a propensity to commit criminal acts, *see, e.g., United States v. Long,* 706 F.2d 1044, 1052 (9th Cir.1983), this is not such a case.

I believe the defendant's four prior convictions fall into that category of evidence that, because it has only slight apparent similarity to or connection with the violation involved here, must be excluded. This case is not unlike *United States v. Burkhart,* 458 F.2d 201 (10th Cir.1972) (en banc), in which certified copies of the defendant's two prior convictions for interstate transportation of stolen motor vehicles with knowledge that they were stolen (one conviction occurring 15 years earlier and the other 4 years earlier) were admitted to show that the defendant had knowledge that the vehicle he was charged with transporting was stolen. In reviewing the admissibility of these convictions, the court said:

> [The certified copies of the judgments of conviction] were not shown to have been connected with the case on trial either as a part of the transaction on trial or to have been related transactions in terms of sharing a common plan, scheme, design or intent, or in terms of factual or other similarity except that they were all Dyer Act violations. The trial court's cautionary instruction at the time was that this

evidence was to be considered by the jury only for the purpose of determining whether defendant acted willfully and with specific intent and not because of mistake or accident or other innocent reason. We have no criticism of either the accuracy or sufficiency of this instruction. It is the extreme remoteness in time and space, together with the lack of any apparent similarity or connection with the principal charge, which creates the problem.

. . . .

> The judgment in this case must be reversed primarily because of the lack of manifest relevancy of the evidence of other or similar offenses in relationship to the cause on trial. The evidence is neither an inseparable part of the case on trial nor does it serve to supply anything more than irrelevant and invalid support of any element of the charge. The plan, scheme, design or intent was not shown to be a common one in relationship to the offense charged and this is an essential requirement.

. . . .

> Factual similarity is to be considered and weighed in determining the strength attributable to the relevancy factor.

*Id.* at 203–04 (footnote omitted), 208.

Even though the prior convictions were not lacking completely in probative value and thus could not be considered entirely irrelevant, the probative value of these convictions is so slight in comparison with their obviously weighty prejudicial effect that the district court's failure to exclude them under Rule 403 was an abuse of discretion. The unfair prejudice flowing from prior convictions—particularly convictions carrying over a span of 20 years—is that they "cast[ ] a shadow over the remaining evidence so that a jury hearing this is necessarily distracted from considering the particular merits." *Id.* at 208.[1] Because of this obvious and palpable danger, it is important that the probative value of prior crime evidence be substantial before it is admitted. Here, the district court did an

---

1. The government apparently understood that the jury might regard the prior convictions as

evidence of Falco's bad character, rather than as evidence of knowledge. It argued to the

excellent job in attempting to minimize the prejudicial effect of the prior convictions. The district court told the jury immediately after the certifications of the prior convictions had been entered into the record and again in the jury instructions that the prior convictions related solely to the issue whether the defendant knew that the goods were stolen. Transcript at 143–44; Record Doc. 50. My concern, however, is not with the steps the district court took to minimize the prejudicial effect of the prior convictions but with the way the district court evaluated the balance between probative value and the prejudice inherent in jury consideration of this "life of crime." By giving undue probative value to the remote and unconnected convictions and in failing to perceive the extreme prejudice created by them, the district court abused its discretion in conducting the balancing required by Rule 403. Although I am extremely reluctant to disturb a district court's exercise of discretion, I would intervene to do so here.

I therefore respectfully dissent.

---

trial court that failure to admit the convictions would result in "the truth [being] distorted[,] for the picture presented will be that of a grey-haired, grandfatherly gentleman who has been himself victimized ...." Government's Memorandum In Support of Motion In Limine at 8.

I cannot help but believe that the potential for the jury to convict the defendant because of his propensity to engage in criminal activity is too great to allow these convictions to be introduced.